**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| AIMEE SUZANNE HICKS | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 1:14-cv-01729-ODE |
| v. | ) | |
| | ) | |
| CARROLL MANAGEMENT GROUP, | ) | |
| LLC, and MICHAEL PATRICK | ) | |
| CARROLL, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S
COMPLAINT AND DEFENDANTS' COUNTERCLAIMS**

COME NOW Defendants Carroll Management Group, LLC ("CMG") and

Michael Patrick Carroll ("Carroll") (collectively "Defendants"), by and through

their counsel of record, and Answer Plaintiff's Complaint as follows.

**JURISDICTION AND VENUE**

1.

Defendants admit that this Court has jurisdiction over the Family and

Medical Leave Act ("FMLA") claims in this case.

2.

Defendants admit that Plaintiff worked for CMG in this district.  Defendants deny any remaining allegations in Paragraph 2 of the Complaint.

3.

Defendants admit that this Court has jurisdiction under 28 U.S.C. §1331 and that Plaintiff has a right to pursue an action under 29 U.S.C. §2617(a)(2)(A). Defendants deny any remaining allegations in Paragraph 3 of the Complaint.

## **PARTIES**

4.

Upon information and belief, Defendants admit that Plaintiff is a citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

Defendant CMG admits it is licensed to do business in Georgia and conducts business in this District.

6.

Defendant CMG admits it has been served with process via counsel.

7.

Defendant Carroll admits it has been served with process via counsel.

## FACTUAL ALLEGATIONS

### 8.

CMG admits that it hired Hicks as Regional Vice President in June 2011. Defendants deny any remaining allegations in Paragraph 8 of the Complaint.

### 9.

CMG admits that Hicks served as CMG's President at times.

### 10.

Defendants are without knowledge regarding the allegations in Paragraph 10 of the Complaint and therefore deny same.

### 11.

Defendants are without knowledge regarding the allegations in Paragraph 11 of the Complaint and therefore deny same.

### 12.

Defendants are without knowledge regarding the allegations in Paragraph 12 of the Complaint and therefore deny same.

### 13.

Defendants are without knowledge regarding the allegations in Paragraph 13 of the Complaint and therefore deny same.

14.

Defendants are without knowledge regarding the medical condition of Plaintiff's husband, if any, and therefore deny all allegations in Paragraph 14 of the Complaint.

15.

Defendants are without knowledge regarding the allegations in Paragraph 15 of the Complaint and therefore deny same.

16.

Defendants are without knowledge regarding the medical condition of Plaintiff's husband, if any, and therefore deny all allegations in Paragraph 16 of the Complaint.

17.

Defendants are without knowledge regarding the medical condition of Plaintiff's husband, if any, and therefore deny all allegations in Paragraph 17 of the Complaint.

18.

Carroll admits he expressed an offer to accommodate Plaintiff at various times.  Defendants deny any remaining allegations in Paragraph 18 of the Complaint.

19.

Defendants admit that on July 2, 2012, Carroll wrote Plaintiff an email stating, "I hope all is well.  I really need to hear from you.  Please give me an update."  Defendants deny any remaining allegations in Paragraph 19 of the Complaint.

20.

Defendants admit that on July 3, 2012, Plaintiff sent an email claiming that she spent time visiting a hospital and promising to report to work the next week. Defendants deny any remaining allegations in Paragraph 20 of the Complaint.

21.

Defendants admit that on July 3, 2012, Plaintiff's email referenced in Paragraph 20 above stated she had been in contact with various persons employed by CMG, but Defendants deny that Plaintiff "had everything under control" at work, and deny any remaining allegations in Paragraph 21 of the Complaint.

22.

Defendants admit that Carroll communicated with Plaintiff about his hopes and expectations of her returning to work, but Defendants deny any remaining allegations in Paragraph 22 of the Complaint.

23.

Defendants admit that Dudley emailed Plaintiff on July 3, 2012, and encouraged Plaintiff to make arrangements to return to work and perform Plaintiff's job duties, but Defendants deny any remaining allegations in Paragraph 23 of the Complaint.

24.

Defendants admit that Plaintiff claimed to need FMLA leave to care for her husband, but Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny any remaining allegations in Paragraph 24 of the Complaint.

25.

Defendants admit that Dudley informed Plaintiff that as a key employee there was a possibility that her job would not be held for her if she took FMLA leave.  Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny any remaining allegations in Paragraph 25 of the Complaint.

26.

Defendants admit Plaintiff returned to work briefly at some point in July 2012.  Defendants are without knowledge regarding the husband's medical

condition, if any, and therefore deny any remaining allegations in Paragraph 26 of the Complaint.

27.

Defendants admit they received a note from Plaintiff that appears to have been drafted by Atlanta Heart Associates, P.C. to Kenneth Hicks stating only that Mr. Hicks was under their care.  Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny any remaining allegations in Paragraph 27 of the Complaint.

28.

Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny the allegations in Paragraph 28 of Plaintiff's Complaint.

29.

Defendants admit that Plaintiff emailed Dudley and Carroll on July 13, 2012, and stated that the email would serve as her "official request for FMLA leave to care for husband due to his heart condition and frequent doctor visits." Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny any remaining allegations in Paragraph 29 of the Complaint.

30.

Defendants admit that in the same email referenced in Paragraph 29 above, Plaintiff stated that she wanted the full 12 weeks of leave and she would return to work on or before October 8, 2012.  Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny any remaining allegations in Paragraph 30 of the Complaint.

31.

Denied.

32.

Defendants admit that Carroll emailed Plaintiff on the evening of July 13, 2012, and stated that Plaintiff was "not on the payroll."  Defendants deny any remaining allegations in Paragraph 32 of the Complaint.

33.

Defendants admit that on or about July 13, 2012, Plaintiff's company email access was turned off.  Defendants deny any remaining allegations in Paragraph 33 of the Complaint.

34.

Denied.

35.

Defendants admit that on July 14, 2012, Dudley told Plaintiff that her FMLA had not been denied and that Dudley would be sending her the paperwork the following Monday.  Dudley also stated she anticipated the leave would be approved.  However, Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny any remaining allegations in Paragraph 35 of the Complaint.

36.

Defendants admit that on July 14, 2012, Plaintiff emailed Dudley and made various claims and allegations against Carroll, but Defendants deny these claims and allegations and deny any remaining allegations in Paragraph 36 of the Complaint.

37.

Defendants admit that Dudley provided Plaintiff with an explanation of the proper process and procedure for seeking an approval for FMLA leave, but Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny any remaining allegations in Paragraph 37 of the Complaint.

38.

Defendants admit that Dudley provided Plaintiff with an explanation of the proper process and procedure for seeing an approval for FMLA leave, but Defendants are without knowledge regarding the husband's medical condition, if any, and therefore deny any remaining allegations in Paragraph 38 of the Complaint.

39.

Defendants admit that Plaintiff herself emailed employees on July 14, 2012, to tell them she had been terminated the prior evening.  Defendants deny any remaining allegations in Paragraph 39 of the Complaint.

40.

Defendants admit that CMG issued a Separation Notice, signed by Dudley, on July 26, 2012, that stated Plaintiff had resigned.  This occurred as the result of Plaintiff not reporting to work, not submitting the FMLA papers requested by CMG and her filing of an unemployment claim, which CMG accepted as Plaintiff's resignation.  Defendants deny any remaining allegations in Paragraph 40 of the Complaint.

41.

Denied.

## COUNT I:  FMLA INTERFERENCE

### 42.

Defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 41 of the Complaint as if fully set forth herein.

### 43.

CMG admits it was Plaintiff's employer as defined by the FMLA.

### 44.

Defendants admit that Plaintiff was an "eligible employee" who could apply for a leave of absence under FMLA, but Defendants deny that Plaintiff complied with the FMLA leave certification process.

### 45.

Denied.

### 46.

Denied.

### 47.

Denied.

## COUNT II:  FMLA RETALIATION

### 48.

Defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 47 of the Complaint as if fully set forth herein.

### 49.

Denied.

### 50.

Denied.

### 51.

Denied.

## PRAYER FOR RELIEF

### 52.

Defendants deny all allegations in the WHEREFORE paragraph at Paragraph 52 the Complaint, including all of its subparts, and deny that Plaintiff is entitled to any relief whatsoever.

### 53.

Defendants deny each and every allegation not specifically answered above.

## DEFENDANTS' AFFIRMATIVE DEFENSES TO COMPLAINT

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted to the extent that it fails to allege each and every element of the causes of action Plaintiff attempts to assert.

2.     Plaintiff's claims fail to the extent they were not filed within the applicable statute of limitations.

3.     Plaintiff's damages, if any, are barred or limited due to the doctrine of after acquired evidence.

4.     Plaintiff's demand for special and/or liquidated damages, if any, are barred or limited because Defendants acted in good faith and did not knowingly or wilfully violate the FMLA.

5.     Plaintiff's damages, if any, are barred or limited to the extent she failed to mitigate her damages.  Any damages alleged by Plaintiff should be offset by interim earnings.

6.     Plaintiff's damages, if any, are barred or limited to the extent she was not injured by Defendants' acts.

7.     Plaintiff's claims for punitive damages violate Defendants' constitutional protection from, including without limitation, excessive fines, cruel

and unusual punishment, denial of due process, and denial of equal protection of law.

8.    Plaintiff's claim for punitive damages and mental and emotional suffering damages, are barred to the extent she has failed to plead a statutory violation that allows her to collect such damages.

9.    Plaintiff's claims for punitive damages are barred because Plaintiff failed to allege acts or omissions by Defendants that would justify such damages.

10.    Plaintiff's claims may be barred in whole or in part due to the doctrines of unclean hands or laches.

11.    Plaintiff cannot recover on her claims to the extent such claims are barred by the doctrines of estoppel or res judicata.

12.    To the extent that any employee and/or agent of Defendant CMG committed any unlawful actions the Plaintiff alleges, which Defendants expressly deny, such individuals' actions were committed outside the scope of their employment with Defendant CMG and Defendant CMG cannot be held liable for such actions.  Defendant CMG never authorized, ratified or condoned any of the unlawful conduct which Plaintiff alleges.

13.   Any damages allegedly sustained by Plaintiff are the result of her own actions and/or omissions and were not actually or proximately caused by Defendants.

14.   Defendants deny that a causal connection exists between any alleged attempt by Plaintiff to exercise any statutory rights, and any action or inaction by Defendants, and any damages or injuries allegedly suffered by Plaintiff, the existence of which Defendants deny.

15.   Plaintiff's claims fail to the extent no adverse employment action was taken against her.

16.   Plaintiff's claims are barred or limited to the extent she was a "key employee" under the FMLA.

17.   Defendants reserve the right to plead and assert additional defenses as discovery of further assertions by Plaintiff should thereafter dictate.

## COUNTERCLAIMS AGAINST PLAINTIFF HICKS

1.      Plaintiff is a resident of this District and is subject to the jurisdiction of this Court as she chose to file her action in this District, with this Court.

2.      Defendant CMG is qualified to do business and is registered with the Georgia Secretary of State to do business in the State of Georgia.

3.      Defendants are subject to the jurisdiction of this Court as Defendants are located in this District and the allegations occurred in this District.

4.      Venue is proper in this Court as Plaintiff worked for CMG in this District and the allegations and causes of action arose in this District.

## FACTUAL ALLEGATIONS

5.      CMG is headquartered in Atlanta, Georgia. The firm was founded in 2004 by Carroll. CMG is a privately held owner and operator of high-quality multifamily real estate focused on private equity real estate investment, asset management, investment/fund management, and property management.

6.      In June 2011, Plaintiff became employed by CMG as Regional Vice President.  She previously worked for a company that was acquired by CMG.

7.      Plaintiff later became President and received a salary raise.

8.      Plaintiff was in the highest paid 10% of CMG employees in Atlanta.

9.      As President, Plaintiff was responsible for the operations of all company managed properties as well as the relevant accounting departments. Further responsibilities included producing property-related financial reporting, developing property management protocols, and maintaining all requisite company compliance processes.

10.     Plaintiff reported directly to Carroll.

11.     In or about April 2012, Carroll learned of allegations indicating that Plaintiff may be bid rigging to give contracts to her husband's construction company.  Defendants began investigating.

12.     Carroll later learned that Plaintiff also may have improperly placed employees on clients' payrolls and that CMG was going over budget as a result of Plaintiff's payroll padding.

13.     Upon information and belief, Plaintiff repeatedly charged properties for fees under the auspices of marketing, which may not have had the requisite supporting financial documentation.

14.     During the months of June and July 2012, Plaintiff was absent from work for various reasons-including but not limited to her own alleged medical issues and alleged medical issues of her husband.

15.     In early July 2012, Carroll emailed Plaintiff to inquire about her return-to-work status.

16.     In early July 2012, Plaintiff emailed Linda Dudley ("Dudley") in Human Resources and stated she might need to take FMLA leave for her husband's alleged health condition.

17.     On July 24, 2012, Plaintiff was arrested for financial transaction card theft.

18.     Plaintiff was arrested because she used a credit card belonging to the victim and unlawfully accumulated charges in the amount of $1,172.39 in the span of one day.

19.     On July 25, 2012, CMG learned from Herbert Shaw ("Shaw"), a property manager for CMG, that he had received a call from Plaintiff in prior months inquiring about invoices that had not been entered into the Company's Yardi tracking system.

20.     Shaw told Plaintiff about invoices he had found in an Assistant Manager's desk area that had not yet been entered into Yardi.

21.     Plaintiff informed Shaw that there were invoices for American Housing Consultants that had not been entered into Yardi, and as such CMG had not paid American Housing Consultants for the purported work.

18

22.     American Housing Consultants is a company incorporated in Georgia. Plaintiff and/or her husband are affiliated with American Housing Consultants.

23.     Shaw did not find the referenced American Housing Consultants invoices in the office and did not have knowledge of them.

24.     Plaintiff stated the invoices were for punch and turnkey work allegedly performed at a CMG property.

25.     Shaw asked Plaintiff to send him the invoices or have the alleged vendor send them to him.

26.     Tracy Cooper from American Housing Consultants later came to the property's leasing office with invoices and asked to use the fax machine to send them to the corporate office.  Cooper stated the invoices were for punches he allegedly did and was never paid for.

27.     Shaw offered to fax the invoices but Cooper insisted he needed to do it himself and needed to fax them to a specific person, who was Plaintiff's personal assistant at CMG.

28.     Shaw later investigated the specifics of the invoices and learned that, in reality, American Housing Consultants had not performed any punch or turnkey work on the specified units.

29.    American Housing Consultants invoices were submitted at Plaintiff's direction for work that in fact was not done.

30.    Invoices were paid by CMG to American Housing Consultants for work that in fact was not done.

31.    In September 2012, CMG submitted a claim to its insurer, Travelers Casualty and Surety Company of America, based on CMG being duped into making payment of these false invoices as perpetrated by Plaintiff, and the claim was paid by Travelers.

32.    A loss in the amount of $25,300 was caused by Plaintiff's direction to submit invoices for payment for work that was not done.  The payment was made to a company owned and/or operated by Plaintiff's spouse.

## COUNTERCLAIM I:  UNJUST ENRICHMENT

33.    Defendants incorporate paragraphs 1-32 of their counterclaims above.

34.    Plaintiff encouraged Cooper to submit false invoices to obtain unwarranted payment from CMG.

35.    The invoices reflected work that had not in fact been done by American Housing Consultants.

36.    As a result of receiving these invoices from Plaintiff and/or her assistant, CMG paid the invoices.

37.     CMG sustained a loss as it made payments to American Housing Consultants for work not actually done.

38.     Plaintiff was unjustly enriched and/or facilitated the unjust enrichment of her husband and/or other agents.

39.     Plaintiff must reimburse CMG for all fraudulent payments made on invoices for work not actually done.

40.     Plaintiff is liable to CMG for her unjust enrichment.

## COUNTERCLAIM II:  BREACH OF FIDUCIARY DUTY

41.     Defendants incorporate paragraphs 1-40 of their counterclaims above.

42.     As a high level executive of CMG, Plaintiff owed a fiduciary duty to CMG.

43.     Plaintiff breached that fiduciary duty by duping CMG into paying invoices for work not done.

44.     Plaintiff breached her fiduciary duties when she funneled work to her husband and/or other agents rather than properly bidding out the work.

45.     Plaintiff and/or her agents profited from these breaches.

46.     As a result of these breaches, and potentially others to be uncovered during discovery, CMG has been injured.

47.     Plaintiff is liable for the breach of her fiduciary duties.

## COUNTERCLAIM III:  FRAUD

48.     Defendants incorporate paragraphs 1-47 of their counterclaims above.

49.     Plaintiff falsely represented to Defendants that CMG should issue payment on invoices for work that was never actually done for CMG.

50.     Plaintiff had full knowledge that the work had not been done by American Housing Consultants, and that CMG had realized no value from those contrived invoices.

51.     Plaintiff intended to induce CMG to pay the invoices to American Housing Consultants, a company with which she and/or her husband are affiliated.

52.     Plaintiff induced CMG to pay the invoices in order to defraud CMG and make money for herself and/or her agents, based on fraud.

53.     CMG relied on the invoices produced by or on behalf or at the direction of Plaintiff, and paid the invoices, because Plaintiff was an executive for CMG, in a position of trust.

54.     In this position of power and influence, Plaintiff accomplished her scheme of intentionally defrauding CMG.

55.     CMG has been injured as a result of Plaintiff's fraud.

**Defendants' Prayer for Relief**

Having fully answered and responded to the allegations in the Complaint and having asserted their own counterclaims, Defendants deny that Plaintiff is entitled to the relief she requests, and Defendants respectfully request that:

1. Plaintiff's claims be dismissed with prejudice in their entirety;

2. Each and every prayer for relief by Plaintiff contained in the Complaint be denied;

3. Defendants' counterclaims be granted in their entirety, with the related damages;

4. Judgment be entered in favor of Defendants;

5. All costs and expenses, including reasonable attorneys' fees, be awarded to Defendants and against Plaintiff pursuant to applicable laws; and

6. Defendants have such other and further relief as this Court may deem just and proper.

Respectfully submitted this 5th day of September, 2014.

_/s/ Deepa N. Subramanian_
Gregory J. Hare
Georgia Bar No. 326020
gregory.hare@ogletreedeakins.com
Deepa N. Subramanian
Georgia Bar No. 278625

deepa.subramanian@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia 30303
Telephone: 404.881.1300
Fax: 404.870.1732


Counsel for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

AIMEE SUZANNE HICKS                )
                                   )
    Plaintiff,                 )       Civil Action No.
                                   )       1:14-cv-01729-ODE
v.                                 )
                                   )
CARROLL MANAGEMENT GROUP,          )
LLC, and MICHAEL PATRICK           )
CARROLL,                           )
                                   )
    Defendants.                )
_____    )

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND DEFENDANTS' COUNTERCLAIMS have been filed via the Court's CM/ECF system and has also been hand delivered to the following counsel of record:

Elizabeth L. Brown
Benjamin F. Barrett
Amanda A. Farahany
Barrett & Farahany, LLP
*Counsel for Plaintiff*

This 5th day of September, 2014.

*/s/ Deepa N. Subramanian*
Deepa N. Subramanian
Georgia Bar No. 278625
